UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LEWIS SWIFT,

                Plaintiff,          5:04-CV-0899

  vs.                                           (NAM/GJD)

JOSEPH MAURO, DAVID BURGESS, STEVE
BEAR and JOHN HAMBLIN,

                Defendants.
_____

**APPEARANCES:**                            **OF COUNSEL:**

Law Office of Mark David Blum               Mark David Blum, Esq.
P.O. Box 82
Manlius, New York 13104
*Attorney for Plaintiff*

Rory A. McMahon                            Joseph R. H. Doyle, Esq.
Corporation Counsel for the City of Syracuse     Ass't Corporation Counsel
233 East Washington Street
300 City Hall
Syracuse, New York 13202-1477
*Attorneys for Defendants*

**Hon. Norman A. Mordue, Chief U.S. District Judge**

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

The present case arises from plaintiff's arrest on April 28, 2004, in the City of Syracuse for a number of traffic offenses and resisting arrest. Plaintiff sues under 42 U.S.C. § 1983 arguing that the defendants, all police officers employed by the City of Syracuse, used excessive force in executing his arrest in violation of the Fourth and Fourteenth Amendments to the United States Constitution. Plaintiff also asserts state law claims for assault and battery and intentional infliction of emotional distress. Defendants move for summary judgment dismissing the complaint.

**II.     FACTUAL AND PROCEDURAL BACKGROUND**

The facts in this case - as gleaned from the parties' moving and opposing papers are as follows:

In the early morning hours of April 26, 2006, plaintiff was just "driving around" with a female companion in his sister's car when, according to defendant Mauro, he failed to stop at a red traffic control light at the intersection of Brighton Avenue and South Salina Street. Defendant Mauro then observed plaintiff pass through another red light at the intersection of South Salina Street and West Seneca Turnpike without stopping. Officer Mauro then activated the emergency lights on his patrol car and began pursuing plaintiff. According to defendant Mauro, plaintiff's vehicle did not stop when he activated his emergency lights. Instead, plaintiff kept driving and traveled at a high rate of speed through two more red lights. After failing to stop at a stop sign on Midland Avenue, plaintiff stopped the car in the middle of the street, exited the vehicle and ran to a rear entrance of a residence at 1815 Midland Avenue.

Plaintiff has not submitted an affidavit in opposition to defendants' motion. Upon review of the transcript of his 50-h earing and deposition in this case, however, it appears that plaintiff does not know why the police were chasing him on the night in question. Although he admits that he failed to obey a stop sign on Midland Avenue, he testified that he did not know the police were following or chasing him until that point. Moreover, he denied that he was speeding or driving erratically. He knew he was being followed by police and failed to stop his vehicle. Plaintiff knew police were outside his home waiting for him and he nevertheless tried to evade law enforcement officers by attempting to enter his apartment building before they could confront him. The heart of the dispute in this case centers on what occurred next. Plaintiff alleges that the defendant police officers used excessive physical force in arresting him. To wit, plaintiff alleges

2

that the defendant officers beat him with their fists even though he did not resist arrest and attempted only to defend himself from defendants' unwarranted attack. Defendants assert that while lawfully attempting to arrest plaintiff for his refusal to stop after police pursued him for violating the traffic law, plaintiff violently resisted. Defendants contend that they were required to use reasonable force to restrain and finally arrest plaintiff, but that the force used was not excessive.

**III.    DISCUSSION**

A.    Summary Judgment Standard

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 258 (1986). Irrelevant or unnecessary facts do not preclude summary judgment, even when they are in dispute. *See id.* The moving party bears the initial burden of establishing that there is no genuine issue of material fact to be decided. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). With respect to any issue on which the moving party does not bear the burden of proof, it may meet its burden on summary judgment by showing that there is an absence of evidence to support the nonmoving party's case. *See id.* at 325. Once the movant meets this initial burden, the nonmoving party must demonstrate that there is a genuine unresolved issue for trial. *See* Fed. R. Civ. P. 56(e). It is with these considerations in mind that the Court addresses defendants' motion for summary judgment.

B.    Substantive Legal Standard

Plaintiff bases his federal claims on 42 U.S.C. § 1983, which reads in part:

3

> Every person who, under color of any statute, ordinance, regulation, custom or usage of any State ..., subjects or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action.

Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n. 3, (1979). Plaintiff claims that defendants violated his constitutional rights because they used excessive force in executing his arrest. The Supreme Court has defined the standard for review of excessive force cases as follows:

> In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force. *See* [*Baker,* 443 U.S.] at 140 ("The first inquiry in any § 1983 suit" is "to isolate the precise constitutional violation with which [the defendant] is charged"). In most instances, that will be either the Fourth Amendment's prohibition against unreasonable seizures of the person, or the Eighth Amendment's ban on cruel and unusual punishments, which are the two primary sources of constitutional protection against physically abusive governmental conduct. The validity of the claim must then be judged by reference to the specific constitutional standard which governs that right, rather than to some generalized "excessive force" standard. *See Tennessee v. Garner*, 471 U.S. 1, 7-22 (1985) (claim of excessive force to effect arrest analyzed under a Fourth Amendment standard); *Whitley v. Albers*, 475 U.S. 312, 318-326 (1986) (claim of excessive force to subdue convicted prisoner analyzed under an Eighth Amendment standard).

*Graham,* 490 U.S. at 393-94. "Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons ... against unreasonable ... seizures' of the person. *Id.* Thus, it is now well-settled that all claims that law enforcement officers have used excessive force in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth

4

Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach. *Id.* (citing, e.g. *Johnson v. Glick*, 481 F.2d 1028, 1032 (2d Cir.) *cert. denied* 414 U.S. 1033 (1973)). "Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Id.*

C.     Excessive Force

Defendants move to dismiss plaintiff's excessive use of force claim on the ground that any force used against plaintiff in executing his arrest was necessary and appropriate under 42 U.S.C. § 1983.

> Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of " 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' " against the countervailing governmental interests at stake. . . . [T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Graham*, 490 U.S. at 396 (internal citations omitted). Courts must view excessive force claims under the long-established principle that the reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *See Terry v. Ohio*, 392 U.S. 1, 20-22 (1968). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers" is actionable under the Fourth

5

Amendment. *Johnson,* 481 F.2d at 1033.  Analysis of reasonableness of force used "must embody . . . the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 397.

It is apparent from only the most cursory review of the record that the Court cannot dismiss this claim presently.  There are numerous material factual issues that are disputed in connection with this claim including the nature of plaintiff's actions when Officer Mauro attempted to place him under arrest, what level of force was necessary to restrain him, which of the defendant police officers participated in the restraint and arrest of plaintiff and whether he was beaten, punched and/or kicked without justification.  These material questions are at the heart of whether defendants used excessive force in placing plaintiff under arrest.  Crediting plaintiff's allegations as set forth in his opposition to defendants' motion, a reasonable jury could find that plaintiff has met his burden of establishing a Fourth Amendment violation.  Thus, summary judgment is inappropriate on plaintiff's excessive force claim.

D.      Qualified Immunity

Mindful of the likelihood of the existence of material questions of fact on the merits of plaintiff's excessive force claim, defendants assert they are entitled - as a threshold matter - to summary judgment on the ground of qualified immunity.  Plaintiff counters that he is entitled to a jury determination of all factual and legal claims herein, including defendants' entitlement to the defense of qualified immunity.  Insofar as the timing of the Court's consideration of defendants' entitlement to qualified immunity, defendants have the better of this argument.  Indeed, the Supreme Court has long held that denying summary judgment any time a material issue of fact remains on an excessive force claim could undermine the goal of qualified immunity which is to

"avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment." *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

More recently, in *Saucier v. Katz*, the Court reiterated its instruction concerning the appropriate time to consider a defense of qualified immunity:

> In a suit against an officer for an alleged violation of a constitutional right, the requisites of a qualified immunity defense must be considered in proper sequence. Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation."  The privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."  As a result, "we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation."

533 U.S. 194, 200-01 (2001) (internal citations omitted).  The Supreme Court has clearly rejected the notion that there is "no distinction between the reasonableness standard for warrantless searches and the qualified immunity standard." *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 643 (1987)).[1]  Because analysis of the defense of qualified immunity is not "merely duplicative" of a court's determination of an excessive force claim, early and particularized resolution of the former is required.  *Id.* at 203.

Thus, when presented with a claim of qualified immunity, a court must consider as an initial question whether "[t]aken in the light most favorable to the party asserting the injury," the

---

[1] In rejecting the argument that the reasonableness standard for Fourth Amendment claims and qualified immunity is identical, the Supreme Court acknowledged there was some "surface appeal" to the contention that it would be "inconsistent to conclude that an officer who acted unreasonably under the constitutional standard nevertheless was entitled to immunity because he 'reasonably' acted unreasonably." *Saucier*, 533 U.S. at 203 (citing *Anderson*, 483 U.S. at 643)).  This "superficial similarity," however, is inapposite given the "justifications for applying the doctrine in an area where officers perform their duties with considerable uncertainty" as to whether their actions comport with the Fourth Amendment.  *Id.*

7

facts "show the officer's conduct violated a constitutional right?" *Id.* at 201.[2]

> If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established. This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition; and it too serves to advance understanding of the law and to allow officers to avoid the burden of trial if qualified immunity is applicable.

*Id.* The Court has already determined, as set forth above, that assuming the truth of plaintiff's evidence and allegations, a jury could find in his favor on the question of excessive force. Consequently, the next step is to consider whether the law clearly established that defendants' conduct was unlawful under the circumstances of the present case.

While there is no doubt that the use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness, the Supreme Court made clear in *Saucier* that in the context of a qualified immunity inquiry, "the right the official is alleged to have violated must have been 'clearly established' in a more particularized and hence more relevant sense." *Id.* (quoting *Anderson*, 483 U.S. at 640). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable

---

[2] The Supreme Court deemed this initial inquiry critical to proper sequential analysis of a qualified immunity defense:

> In the course of determining whether a constitutional right was violated on the premises alleged, a court might find it necessary to set forth principles which will become the basis for a holding that a right is clearly established. This is the process for the law's elaboration from case to case, and it is one reason for our insisting upon turning to the existence or nonexistence of a constitutional right as the first inquiry. The law might be deprived of this explanation were a court simply to skip ahead to the question whether the law clearly established that the officer's conduct was unlawful in the circumstances of the case.

*Saucier,* 533 U.S. at 201.

8

officer that his conduct was unlawful in the situation he confronted." *Id.* (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999)). "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Id.* (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law").

As referenced above, excessive force claims are properly analyzed under the Fourth Amendment's "objective reasonableness standard," because of the uncertainty and rapidity inherent in police work. *Graham*, 490 U.S. at 396. Indeed, *Graham* sets forth a list of factors relevant to the merits of the constitutional excessive force claim which include analysis of the crime at issue, the threat posed by a suspect and any attempt by the suspect to evade or resist arrest. *See id.* If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed. *See id.*

On the other hand, "the concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct." *Saucier*, 533 U.S. at 205.

> It is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances. If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense.

*Id.* Thus, the distinction between reasonableness as applied to excessive force cases and reasonableness in the context of qualified immunity is that the former contemplates a mistaken factual belief while the latter considers a mistake as to the scope of the law. To wit:

9

> [O]fficers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of probable cause or exigent circumstances, for example, and in those situations courts will not hold that they have violated the Constitution. Yet, even if a court were to hold that the officer violated the Fourth Amendment by conducting an **unreasonable, warrantless search,** *Anderson* still operates to grant officers immunity for reasonable mistakes as to the legality of their actions.

*Id.* at 206 (emphasis added).

In the present case, defendants conflate the concepts of "clearly established" legal principles with "reasonableness" as distinctly applied to claims of excessive force and qualified immunity. Defendants contend correctly that the right to make an arrest or investigatory stop "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (2001). Defendants also cite Second Circuit case law which holds that handcuffing of arrestees in most arrest situations is reasonable. *See Soares v. State of Connecticut*, 8 F.3d 917, 921 (2d Cir. 1993). However, defendants' argument becomes impossibly circular when they contend that since it was reasonable to handcuff plaintiff to effect his arrest and plaintiff resisted being handcuffed, it was reasonable for them to bring him to the ground to place handcuffs upon him. According to defendants, the absence of clear legal authority establishing plaintiff's right **not** to be handcuffed renders their efforts to handcuff him reasonable and therefore, protected by the doctrine of qualified immunity.

In fact, the appropriate analysis of defendants' defense of qualified immunity "has a further dimension." *Saucier*, 533 U.S. at 205. Although the Court must apply objective analysis to the question whether reasonable officers could have believed that their forceful "takedown" of plaintiff was lawful in order to affect his arrest, the inquiry is still "fact-specific." *Anderson*, 483 U.S. at 641. In this case, the versions of the events which unfolded on April 28, 2004, offered by

10

plaintiff and defendants are so starkly in contrast, the Court does not possess the facts needed to resolve the objective legal question. Indeed, defendants assert that plaintiff attempted to evade arrest by ignoring traffic control devices, fleeing from and/or failing to stop for police vehicles in pursuit, running from his vehicle to the back door of his home and refusing to heed police commands to stop, turn and place his hands behind his back. Moreover, defendants contend that when Officer Burgess approached him and grabbed his arms, plaintiff violently resisted arrest by attempting to push Officer Burgess away and break free. According to Burgess, when plaintiff continued to push away and refuse to be handcuffed, he and plaintiff tumbled down the back staircase to plaintiff's apartment. Burgess avers that when additional officers arrived on the scene, plaintiff continued to resist, swinging his elbows in the direction of defendants and tucking his arms under his chest. Defendants state that they struck plaintiff several times on the arms and shoulders to force him to stop resisting and preventing his hands from being handcuffed.

In contrast, plaintiff alleges that before he even reached the door of his apartment - that is, before any police officer spoke to him and before he even had the opportunity physically to resist arrest (which he also denies), he was punched in the face by one or more of the defendants. After that, plaintiff states that he was laying outside the door to his apartment with his eyes closed trying to protect his face while some or all of defendants kicked and punched him. Thus, the question at the present time is not whether it was reasonable for defendants to believe that they were legally entitled to use force including striking plaintiff about the arms and shoulders in order to stop him from continuing to resist arrest, but whether he resisted arrest in the first instance. In short, this is not a case where the Court has the necessary facts to decide whether the amount of force used was objectively or legally reasonable because the initial inquiry of whether force was even necessary has not yet been answered. If the facts are as set forth by defendants it might be

11

appropriate to find that the officers believed that the amount of force used was necessary and reasonable even if it violated Fourth Amendment principles.  However, if plaintiff's version of the facts is credited, it is hard to conceive of how any police officer could be found to have reasonably concluded it was necessary to punch plaintiff in the face prior to speaking to him or attempting to handcuff him.

Based thereupon, the motion by defendants to dismiss plaintiff's excessive force claims on the ground of qualified immunity must be denied without prejudice.

E.      Claims Against Defendant Hamblin

The law is clear that personal involvement is a prerequisite to an award of damages against an individual defendant in an action arising under 42 U.S.C. § 1983.  *See Williams v. Smith,* 781 F.2d 319, 323 (2d Cir. 1986).  Individuals are liable under § 1983 in their personal capacity only if they were personally responsible for violating a plaintiff's rights or promulgated unconstitutional policies or plans or otherwise authorized or approved misconduct under circumstances indicating deliberate indifference.  *See id.*; *see also Rizzo v. Goode,* 423 U.S. 362, 371 (1976); *Meriwether v. Coughlin,* 879 F.2d 1037, 1048 (2d Cir. 1989); *Duchesne v. Sugarman,* 566 F.2d 817, 831 (2d Cir. 1977).

In the present case, defendant Hamblin contends that plaintiff makes no factual averments demonstrating what, if anything, he did personally in furtherance of violating plaintiff's constitutional rights or failing to prevent the other named defendants from allegedly doing so.  The Court agrees.  The arguments of plaintiff's counsel concerning what "had to be obvious" to defendant Hamblin concerning plaintiff's physical condition when he arrived at the Justice Center are not evidence and are insufficient to create a triable question of fact concerning defendant Hamblin's alleged involvement in the constitutional deprivations claimed by plaintiff.  Moreover,

even if the Court were to accept (which it does not) plaintiff's speculative claim that defendant Hamblin authored e-mails in which he "bragged" about the details of plaintiff's arrest and detention, there is no basis to attribute this alleged *post facto* conduct to the constitutional violations at issue herein.

## IV.  CONCLUSION

Based on the foregoing, it is hereby

ORDERED that the motion by all defendants to dismiss plaintiff's excessive force claims is DENIED[3]; and it is further

ORDERED that the motion by defendant Hamblin to dismiss all claims against him is GRANTED.

IT IS SO ORDERED.

Dated: January 24, 2008
Syracuse, New York

_____
Norman A. Mordue
Chief United States District Court Judge

---

[3] Inasmuch as plaintiff's counsel avers that there is no cause of action pending by plaintiff for false arrest and/or imprisonment, the Court need not address defendants' motion to dismiss these claims.

13